# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARLOS ZUNIGA HERNANDEZ,** | : | |
| **Plaintiff,** | : | |
| | : | CIVIL ACTION NO. 4:10-0332 |
| v. | : | |
| | : | (CONNER, D.J.) |
| **UNKNOWN OFFICER, OFFICER ARENAS, LT. SOELLER,** | : | (MANNION, M.J.) |
| | : | |
| **Defendants.** | | |

## REPORT AND RECOMMENDATION[1]

Pending before the court is defendant Luis Arenas and defendant Robert Soeller's motion to dismiss and/or, in the alternative, for summary judgment. (Doc. No. 19). For the reasons set forth below, the court recommends that the defendants' motion be **GRANTED**.

## I.  FACTS AND PROCEDURAL BACKGROUND

Plaintiff Carlos Zuniga Hernandez is presently incarcerated at the Federal Correctional Institution at Allenwood, Pennsylvania ("FCI Allenwood"). On January 9, 2009, plaintiff alleges that he was taking a shower at 9:45 a.m.

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

in a single stall when another inmate, namely Spencer Hill, entered the stall and began making sexual advances towards him. (Doc. No. 1 at ¶1).Consequently, plaintiff alleges that he chased Hill out of the stall and then rushed back to his cubicle. *Id*. At about 7:00 p.m., plaintiff allegedly reported this shower incident to defendant "unknown officer" who worked in his unit. *Id.* at ¶3. The next day plaintiff asked defendant unknown officer what happened, and the unknown officer allegedly told him that the incident was under investigation. *Id.*

On January 13, 2009, plaintiff alleges that while he was showering inmate Hill, again, began making sexual advances towards him. *Id.* at ¶4. Plaintiff began yelling and allegedly Hill ran away. *Id.* at ¶5.[2]

On the morning of January 14, 2009, plaintiff was entering his cubicle and he observed inmate Hill going through his locker. *Id.* at ¶7. Plaintiff began to yell at Hill who allegedly grabbed plaintiff's lock and tried to hit him with it, and then Hill ran out of plaintiff's cubicle. *Id.*

Following this incident concerning plaintiff's property, plaintiff allegedly

---

[2] Because of these two shower incidents, plaintiff alleges that he did not want to sleep in his bed that night. *Id.* at ¶6. Therefore, another inmate allegedly allowed plaintiff to sleep on the floor of his cubicle. *Id.*

2

went to defendant Arenas to report this incident as well as the two prior shower incidents. *Id.* at ¶8. Defendant Arenas allegedly told plaintiff that Hill was sent to the Special Housing Unit to see the Lieutenant. *Id.* at ¶9. Later that morning Hill returned to the unit, and defendant Arenas instructed plaintiff to remain on the A side of Union Unit, away from Hill, until lunch when he could speak to the Lieutenant. *Id.* at ¶13.

During lunch that day plaintiff spoke to defendant Lieutenant Soeller. *Id.* at ¶14. Specifically, plaintiff told him about how Hill sexually harassed him, attempted to rape him in the shower, and that Hill attempted to take property from his locker. *Id.* at ¶15. Defendant Soeller then asked plaintiff why he never requested to have his cubicle changed. *Id.* at ¶16. Plaintiff replied that he did not believe that being moved from one side of the unit to the other would help. *Id.* Defendant Soeller then told plaintiff that he spoke to Hill and that Hill would not enter plaintiff's cubicle to bother him anymore. *Id.* at ¶17.

Later that night, at about 8:15 p.m., Hill rushed into plaintiff's cubicle and struck him in the face with an object wrapped around his hand. *Id.* at ¶18. Hill allegedly told plaintiff that he should have just "given that ass up." *Id.* Hill continued to kick and hit plaintiff. *Id.* Plaintiff alleges that he then broke away and ran to the other side of the unit, but Hill followed him and they ultimately

3

wound up in another cubicle. *Id.* at ¶20. Plaintiff allegedly grabbed what appeared to be a lock in a sock from Hill's right hand, and began hitting him with it. *Id.* at ¶21. Several inmates broke up the fight and plaintiff began to walk back to his side of Union Unit. *Id.* at ¶22. As a result of this incident, plaintiff injured his hand, fractured his nose, and received twenty-two (22) staples in his head. *Id.* at ¶24.

Following the incident, plaintiff spoke to a Special Investigative Supervisor, namely Officer Baker. *Id.* at ¶27. Plaintiff told him that Hill had previously attempted to rape him as well as steal his property. *Id.* Plaintiff also told Officer Baker that he reported these incidents to an unknown officer and to defendants Arenas and Soeller. *Id.*

On January 15, 2009, defendant Soeller visited the plaintiff who was housed in the Special Housing Unit. *Id.* at ¶28. Plaintiff complained that the officers were supposed to protect him and defendant Soeller told the plaintiff that they would "get to the bottom of this." *Id.*

On March 11, 2009, plaintiff received an incident report which indicated he was charged with possession, manufacture of a weapon/fighting with another person. *Id.* at ¶30. After reviewing the incident report, the plaintiff filed an informal resolution because the incident report did not mention how Hill

previously attempted to rape the plaintiff as well as steal property from his locker.[3] *Id.* at ¶31.

On April 9, 2009, the plaintiff had a disciplinary hearing. Plaintiff's Ex. F, (Doc. No. 1-8). At this hearing, defendant Arenas testified that the plaintiff did not tell him the specifics of plaintiff's issues with Hill. *Id.* Ultimately, the Disciplinary Hearing Officer ("DHO"), concluded that plaintiff committed the prohibited acts of manufacture/possession of a weapon as well as fighting with another person.[4] *Id.*

Based on the foregoing, plaintiff filed this civil rights action pursuant to 28 U.S.C. §1331 claiming that the defendants violated his Eighth Amendment rights because (1) defendant unknown officer failed to protect the plaintiff after he informed him of the attempted rape on January 9, 2009; (2) defendant Arenas lied to the Special Investigative Supervisor as well as the DHO about plaintiff's complaint to him with respect to being sexually harassed by Hill; and (3) defendant Soeller failed to respond to the two attempted rapes and attempted theft of his property by Hill. (Doc. No. 1 at ¶¶44-46).

---

[3] In addition, the plaintiff states that he sent letters to the Mexican consulate. (Doc. No. 1 at ¶¶34-35).

[4] The DHO noted that shortly after the incident the plaintiff admitted to manufacturing that weapon. *Id*.

On August 19, 2010, the defendants filed a motion to dismiss and/or, in the alternative, for summary judgment. (Doc. No. 19). This motion is fully briefed. (Doc. No. 21); (Doc. No. 28); (Doc. No. 30). Thus, the motion is ripe for our consideration.

II.     **STANDARD OF REVIEW**[5]

The defendants' motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must

---

[5] The court will analyze the defendants' motion to dismiss, and/or in the alternative for summary judgment, as a motion to dismiss pursuant to 12(b)(6) because the court is not going to consider documents outside the complaint in order to resolve the defendants' motion.

6

be sufficient to "raise a right to relief above the speculative level." *Twombly, 550 U.S. 544, 127 S. Ct. at 1965*. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l*

*Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

### III. LEGAL ANALYSIS

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the "unnecessary and wanton infliction of pain." *Whitley*, 475 U.S. at 319. This constitutional limitation on punishment has been interpreted to impose a duty upon prison officials to take reasonable measures "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted). While "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for a victim's safety," "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citations omitted). Accordingly, "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828.

For an inmate to prevail on an Eighth Amendment failure to protect claim, two requirements must be met. First, the prisoner must demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. This element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id.* Second, the prison officials involved must have a sufficiently culpable state of mind. *Id.* at 838. Specifically, the inmate must show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial serious harm exists, and he must also draw the inference." *Id.* This subjective requirement is satisfied, for example, where the plaintiff "presents evidence showing that a substantial risk of inmate attacks was long-standing, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it . . . ." *Id.* at 842.

### A. Defendant Arenas

Defendant Arenas argues that plaintiff's allegations do not indicate that he acted with the requisite level of conscious disregard for plaintiff's safety that is required to sustain a claim for failure to protect under the Eighth

Amendment. The court agrees.

Based on plaintiff's allegations, it appears that defendant Arenas took measures to protect plaintiff's safety. On the morning of January 14, 2009, the plaintiff informed defendant Arenas of the two shower incidents and the incident where Hill was looking through his locker. Following that conversation, plaintiff alleges that defendant Arenas sent inmate Hill to see the lieutenant. In addition, following plaintiff's unit team meeting, defendant Arenas instructed plaintiff to go to the other side of the unit, away from Hill, until lunch - at which point plaintiff would be able to speak to defendant Lieutenant Soeller. Consequently, plaintiff's allegations indicate that defendant Arenas did take corrective action such as requiring inmate Hill to speak to the Lieutenant, separating plaintiff from inmate Hill until lunch, and then giving the plaintiff an opportunity to present his complaints to the Lieutenant at lunch that day. Therefore, plaintiff's own allegations establish that defendant Arenas responded reasonably to plaintiff's concerns and that he actually took measures to protect the plaintiff from inmate Hill. *See Farmer, 511 U.S. at 830* (prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted). In sum,

defendant Arenas' alleged actions do not show any conscious, culpable refusal to prevent a known risk of harm.

In addition, to the extent plaintiff alleges that defendant Arenas made false statements, after the incidents, to the Special Investigative Supervisor as well as to the DHO, the court cannot not find that these alleged false statements amount to a violation of plaintiff's Eighth Amendment rights. Because these alleged statements were made after the incidents between Hill and plaintiff occurred, the court cannot find that these alleged statements, made after the fact, somehow caused plaintiff's injuries.[6]/[7]

---

[6] The court notes that with respect to defendant Arenas' alleged false statements to the Special Investigative Supervisor allegedly resulting in a false incident report, the courts have ruled, however, that a false incident report does not amount to a violation of plaintiff's constitutional rights. *See* [Booth v. Pence, 141 Fed. Appx. 66 (3d Cir. 2005)](); *Hunter v. Bledsoe*, No. 10-0927, 2010 U.S. Dist. LEXIS 79871, at *9 (M.D. Pa. Aug. 9, 2010) ("A false misconduct charge does not itself qualify as an Eighth Amendment violation."). *See, e.g.,* [Gay v. Shannon, 211 Fed. Appx. 113, 116 (3d Cir. 2006)]() (issuance of an allegedly false misconduct report does not violate due process); [Rhoades v. Adams, 194 Fed. Appx. 93, 94-95 (3d Cir. 2006)]() (same); [Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002)]()(allegation of false disciplinary report resulting in seven months' disciplinary confinement not sufficient to constitute a due process deprivation).

[7] To the extent that plaintiff may take issue with the disciplinary hearing, namely because the DHO relied on the alleged false testimony given by defendant Arenas, it appears that any such claims appear to be barred by the *Heck* doctrine as there is no indication that the findings by the DHO were ever overturned. *See* [Edwards v. Balisok, 520 U.S. 641, 646-47 (1997)]() (an inmate may not bring a civil rights action related to an inmate disciplinary proceeding

Therefore, the court recommends that plaintiff's Eighth Amendment claims against defendant Arenas be dismissed.

B.   **Defendant Soeller**

Defendant Soeller also argues that plaintiff's allegations do not establish that he acted with the requisite level of conscious disregard for plaintiff's safety that is required to sustain a failure to protect claim under the Eighth Amendment. The court agrees.

The plaintiff's allegations indicate that defendant Soeller responded to the situation in a reasonable manner. During plaintiff's lunch on January 14, 2009, he allegedly informed defendant Soeller of the shower incidents and the property incident involving inmate Hill. During this conversation, defendant Soeller stated that he spoke to inmate Hill and that he believed Hill would no longer enter plaintiff's cubicle to bother him. In addition, defendant Soeller inquired as to why the plaintiff failed to request protective custody if he was afraid for his safety.

As such, plaintiff's allegations indicate that defendant Soeller attempted to diffuse the situation by speaking to both inmates. Moreover, plaintiff's

---

without first challenging and overturning, via appropriate proceedings, the disciplinary hearing in question); *Walker v. Zenk*, No. 01-1644, 2008 U.S. Dist. LEXIS 9086, at *31-34 (M.D. Pa. Feb. 7, 2008).

allegations also indicate that it was the plaintiff who did not seek protective custody in order to be moved away from inmate Hill. Therefore, even if plaintiff's allegations are true, it appears that defendant Soeller was, at most, negligent in not placing plaintiff in protective custody, and unfortunately for plaintiff, negligence on the part of defendant Soeller does not give rise to a constitutional violation.[8] *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986) (even though the officials' lack of due care had led to the plaintiff's injuries, such "negligence" could not be the basis of a constitutional violation).

Thus, it appears that defendant Soeller did take reasonable measures to protect plaintiff, and that defendant's actions do not show any conscious, culpable refusal to prevent a known risk of harm. Consequently, the court recommends that defendant Soeller's motion to dismiss be granted.[9]

---

[8] Although not addressed by the defendants, to the extent that plaintiff seeks to recover under a negligence theory, there is no indication in the record that plaintiff has exhausted his FTCA administrative remedies. As such, to the extent he does seek to recover under a negligence theory, the court would recommend the action be dismissed on that ground. *See* 28 U.S.C. §2675(a).

[9] Therefore, the court need not address the defendants' remaining alternative arguments such as failure to exhaust administrative remedies and qualified immunity.

## IV. RECOMMENDATION[10]

For the reasons elaborated above, **IT IS RECOMMENDED THAT**: Defendants' motion to dismiss and/or, in the alternative, for summary judgment, (Doc. No. 19), be **GRANTED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**DATE:** January 7, 2011
O:\shared\REPORTS\2010 Reports\10-0332-01.wpd

---

[10] For the convenience of the reader, the court has attached copies of unpublished opinions cited within this document.